### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| RICARDO PANNEFLEK | CIVIL NO.: |
| Plaintiff, | |
| v. | TRADEMARK INFRINGEMENT; UNFAIR COMPETITION; FALSE ADVERTISEMENT AND REQUEST FOR INJUNCTIVE RELIEF |
| MIAMI ALL NETWORK MARKETING INC.; RENZO VERASTEGUI; RENATTA G. VERASTEGUI; DELIVERY DRD CORP.; NEW LIFE BROADCASTING INC; ARSO RADIO CORPORATION; XYZ CORPORATION, JOHN DOE AND JANE DOE | JURY TRIAL |
| Defendants | |

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

**TO THE HONORABLE COURT:**

**I.    PRELIMINARY STATEMENT**

Plaintiff, Ricardo Panneflek (hereinafter "Plaintiff"), respectfully submits this memorandum in support of his request for preliminary injunctive relief pursuant to Rule 65 Fed. R. Civ. Proc. to enjoin defendants, Miami All Network Marketing Inc. ("Miami All Network"), Renzo Verastegui ("REV"), Renatta G. Verastegui ("RGV"), Delivery DRD Corp. ("Delivery DRD"), New Life Broadcasting, Inc. ("New Life"), Arso Radio Corporation ("Arso")  (hereinafter collectively referred to as "Defendants") from using the mark *Colágeno Bioactivo 21* or any other mark that is confusingly similar

to Plaintiff's *Collagen 21®* mark  in connection with the promotion, marketing, distribution, offering for sale and sale of collagen products.

This is an action for trademark infringement, unfair competition and false advertising for Defendant's unauthorized use of Plaintiff's registered trademark *Collagen 21®* with the intent to benefit from the goodwill acquired by Plaintiff through his prolonged and continued use of the *Collagen 21®* mark in connection with collagen products.  The legal grounds asserted by plaintiff are violations of §§ 32 and 43(a) of the Lanham Act, 15 U.S.C. § 1114(1) and § 1125(a), for false advertisement and trademark infringement under the Puerto Rico Trademark Act, 10 P.R. Laws Ann. § 223(a).

Defendant's use of the trademark *Colágeno Bioactivo 21* in the promotion, marketing distribution and sale of collagen products in the United States is purposefully designed to cause confusion as to source and seeks to benefit from and exploit the reputation and goodwill of Plaintiff's *Collagen 21®* Mark.  Defendants adopted the trademark *Colágeno Bioactivo 21* intentionally with the purpose of inducing substitution of their products for those of Plaintiff.  If allowed to continue, such conduct will inevitably result in serious irreparable injury to the Plaintiff.

## II.    STATEMENT OF FACTS

### A. *Plaintiff and his Mark*

The relevant facts are set forth in detail in the Complaint herein to which the Court is respectfully referred.  The following is a summary of these facts for the convenience of the Court.

Plaintiff owns a federally registered mark, *Collagen 21®*, U.S. Registration No. 5706606, issued by the United States Patent and Trademark Office on March 26, 2019, for use in connection with "[d]ietary supplements incorporating collagen, vitamin D and minerals for strengthening bones and enhancing skin appearance to assist in control of premature aging." *Exhibit 1.*

Plaintiff has used the *Collagen 21®* Mark in commerce continuously throughout the United States, including Puerto Rico, since **July 8, 2014** in connection with the marketing, advertising, promotion, distribution and sale of his dietary supplement products.

Plaintiff sells its products under the *Collagen 21®* Mark in the United States, including Puerto Rico in the following outlets: mundonaturaltv.com, organicfarmsvitamins.com, Mundo Natural's call center, Walgreens and Amazon. The sales of *Collagen 21®* during the last year amounted to approximately $636,120.00.

As a result of Plaintiff's extensive marketing and promotion expenditures and efforts, the Collagen 21® Mark has come to signify the high quality of the collagen product, it has achieved a substantial volume of sales and widespread recognition in Puerto Rico. Plaintiff's Collagen 21® Mark has become a valuable asset and is famous.

### B. Defendants Infringement of Plaintiff's Mark

Upon information and belief, Miami All Network, REV and RGV are engaged in manufacturing, distributing, promoting, advertising, offering for sale and selling supposedly natural products.

Without Plaintiff's authorization, beginning after Plaintiff acquired protectable exclusive rights in its *Collagen 21®* mark, Defendants adopted and began using a colorable imitation to Plaintiff's Mark, namely, *Colágeno Bioactivo 21*, the Infringing Mark, in U.S. commerce in connection with the promotion, advertisement, distribution and sale of a collagen product.

Defendants Miami All Network, REV and RGV illegally copied the dominant feature of Plaintiff's trademark by adding "21" to its *Colágeno Bioactivo 21* mark.

Plaintiff, as well as the named defendants, currently advertise and sell their products through the Internet, television infomercials, YouTube, and radio stations. In fact, Plaintiff has a spot for an infomercial about *Collagen 21®* on Radio Uno right after Defendants' infomercial about *Colágeno Bioactivo 21* is aired.

Miami All Network, REV and RGV constantly promote and advertise the trademark in infomercials broadcasted in Radio Uno and New Life.

Despite being informed of Plaintiff's exclusive rights in and to the *Collagen 21®* mark, Arso Radio, owner of Radio Uno, and New Life continue to air the infomercials featuring Defendants infringing *Colágeno Bioactivo 21* mark in clear disregard of Plaintiff's trademark rights.

Numerous consumers have contacted Mundo Natural's call center requesting information about the infringing *Colágeno Bioactivo 21* product and seeking to buy the same when in fact Mundo Natural offers for sale only *Collagen 21®*.

Co-defendants Miami All Network, REV and RGV unauthorized use in commerce of the Infringing Mark as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of co-defendants' collagen products, and is likely to cause consumers to believe, contrary to fact, that co-defendants' collagen products are sold, authorized, endorsed or sponsored by Plaintiff, or that co-defendants are in some way affiliated with or sponsored by Plaintiff.

Defendants are falsely claiming that their *Colágeno Bioactivo 21* products are natural and that they have twenty-one (21) types of collagen, when in fact a natural supplement that has not been pharmaceutically or chemically processed can't have this characteristic or quality.

Defendants' false and misleading advertising claims regarding the ingredients in their products bearing the infringing *Colágeno Bioactivo 21* have resulted in the loss of current and prospective consumers who, but for Defendants' false and misleading advertising claims, would have purchased products from Plaintiff.

## III.    STATEMENT OF THE QUESTION PRESENTED

Should the Court enjoin Defendants' infringement of the *Collagen 21®* Mark before Defendants' *Colágeno Bioactivo 21* infringing mark destroys the goodwill and reputation that Plaintiff has established through over eight (8) years of using the mark?

## IV.    ARGUMENT

### A.  The legal standard for granting a preliminary injunction

A preliminary injunction is available in trademark infringement cases under the Lanham Act.

The standard governing the granting of motions for preliminary relief in this Circuit are well settled.  A preliminary injunction will issue upon the showing of:

(1) a substantial likelihood that the movant will ultimately prevail on the merits;

(2) a showing that the movant will suffer irreparable injury unless the injunction issues;

(3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and

(4) a showing that the injunction, if issued, would not be adverse to the public interest. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).  The first two factors are the most important. Cf. Nken v. Holder, 556 U.S. 418, 434 (2009).

As it will be shown, Plaintiff satisfies the First Circuit test for injunctive relief. Accordingly, the Court should grant Plaintiff's request for a preliminary injunction and order Defendants to refrain from promoting, marketing, distributing and selling the infringing *Colágeno Bioactivo 21* collagen product or any other designation confusingly similar to Plaintiff's *Collagen 21®* Mark.

### 1.  <u>Plaintiff is likely to succeed on the merits of his claims for trademark infringement, unfair competition and false advertising</u>

Claims for trademark infringement in violation of 15 U.S.C. § 1114 and unfair competition in violation of 15 U.S.C. § 1125 require proof of the same five elements: (1) the plaintiff owns a valid, protectable mark; (2) the defendant used the mark without authorization; (3) the defendant's use was "in commerce"; (4) the defendant's

use was "in connection with the sale, offering for sale, distribution, or advertising" of goods or services; and (5) the defendant's use creates a likelihood of confusion. Lamparello v. Falwell, 420 F.3d 309, 313 (4th Cir. 2005). All five elements weigh in favor of Plaintiff.

**(a)    Plaintiff owns a valid, protectable mark**

As to the first threshold requirement, it is undisputed that Plaintiff the trademark *Collagen 21®* is owned by Plaintiff and is currently outstanding and valid and registered in the United States Patent and Trademark Office.

**(b)    Defendants are using the infringing mark without authorization**

Defendants have used and continue using the *Colágeno Bioactivo 21* mark in the sale of dietary supplements containing collagen. Defendants, Miami All Networks, REV and RGV, use the *Colágeno Bioactivo 21* on its www.miamianm.com website, which they own and operate. *See Exhibit 3.* By the same token, co-defendant, Delivery DRD Corp. engages in the distribution of the infringing *Colágeno Bioactivo 21*-products in Puerto Rico.

Plaintiff has not authorized any of the foregoing uses of its *Collagen 21®* Mark or such a similar mark, as used by Defendants. Thus, the second element is satisfied.

**(c)    Defendants are using the infringing mark in commerce in connection with the sale, offering for sale, distribution, or advertising of goods**

This element is a jurisdictional requirement that "denotes Congress's authority under the Commerce Clause rather than an intent to limit the [Lanham] Act's application to profit making activity." Cable News Network L.P., L.L.L.P. v.

CNNews.com, 177 F. Supp. 2d 506, 517 (E.D. Va. 2001) (quotations and citations omitted). "In the computer and Internet context, courts have consistently held that providing information over the Internet satisfies the commerce requirement of the Lanham Act." Id. at 517 n.25; Planned Parenthood Fed'n of Am., Inc. v. Bucci, No. 97 Civ. 0629 (KMW), 1997 WL 133313, at *3 (Mar. 24, 1997) ("The nature of the Internet indicates that establishing a typical home page on the Internet, for access to all users, would satisfy the Lanham Act's 'in commerce' requirement.").

In *Cable News Network*, the infringer was a Chinese company that published a website with the domain name, www.cnnews.com, which provided news and information to Chinese-speaking individuals and was "directed solely at internet users outside the U.S." 177 F. Supp. 2d at 511–12, 517. The infringer's use nevertheless satisfied the "in commerce" element because of the "global nature of the Internet," the large number of Chinese-speaking individuals in the United States, and "the fact that '.com' is essentially an American top-level domain." Id. at 517.

Here, the connection to interstate commerce is even stronger because Defendants are American companies and citizens who are actively promoting, advertising, distributing and selling the infringing *Colágeno Bioactivo 21* mark and goods. Moreover, as in *Cable News Network*, Defendant's Miami All Network ".com" website is housed on top-level domains available in the United States. Accordingly, Defendants undoubtedly use the infringing *Colágeno Bioactivo 21* mark in commerce and, thus, the third and fourth elements to prove likelihood of success on the merits of the claims are satisfied.

**(d)   Defendants' use of the infringing mark is likely to cause confusion with Plaintiff's *Collagen 21*® Mark**

Section 32(1)(a) of the Lanham Act governs claims for infringement of registered marks. It provides that a person is liable for trademark infringement if the person reproduces, counterfeits, copies or imitates a registered trademark where such use is likely to deceive or cause confusion or mistake." 15 U.S.C. § 1114(1)(a); Nutrasweet Co. v. Venrod Corp., 982 F. Supp. 98 (D.P.R. 1997).

Not all conceivable forms of confusion are relevant to trademark infringement. "Confusion is relevant when it exists in the minds of persons in a position to influence the purchasing decision or persons whose confusion presents a significant risk to the sales, goodwill, or reputation of the trademark owner." Beacon Mut. Ins. Co. v. OneBeacon Ins. Grp., 376 F.3d 8, 10 (1st Cir. 2004); see also Lang v. Ret. Living Publ'g Co., 949 F.2d 576, 583 (2d Cir. 1991) (noting that confusion in the relevant sense means confusion that "could inflict commercial injury in the form of either a diversion of sales, damage to goodwill, or loss of control over reputation").

There are three kinds of confusion proscribed by the Lanham Act, all of which are present in the case at bar:

> The first is simple product confusion, which occurs when consumers might purchase a defendant's infringing product thinking it was plaintiffs'. The other type of confusion is that of source or sponsorship, which arises when a consumer might believe that the plaintiff has approved or sponsored the defendant's product. The third main type of confusion is known as subliminal trademark association, which exists when a defendant is able to gain a foothold in the plaintiff's market by exploiting subliminal or conscious association with plaintiff's protected name, mark or trade dress. *See*, Veryfine Products, Inc*.,* 799 F. Supp. at 251.

In <u>Pignons S.A. de Mecanique de Precision</u>, 657 F.2d at 487, the First Circuit held that the following eight factors must be considered in determining whether there is likelihood of confusion: (1) the similarity of the marks; (2) the similarity of the goods; (3) the relationship between the parties' channels of trade; (4) the relationship of the parties' advertising; (5) the classes of prospective purchasers; (6) evidence of actual confusion; (7) the defendant's intent in adopting its mark; and (8) the strength of the mark.  The First Circuit has adopted and continues to follow the <u>Pignons S.A. de Mecanique de Precision</u> formulation.  *See* <u>Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Winship Green Nursing Ctr.</u>, 103 F.3d 196, 201 (1st Cir. 1996); None of these factors is necessarily controlling, but all of them must be considered. <u>Astra Pharm. Prods., Inc. v. Beckman Instruments, Inc.</u>, 718 F.2d 1201, 1205 (1st Cir. 1983).

As will be shown, these factors demonstrate that Defendants' use of the *Colágeno Bioactivo 21* trademark is causing and will continue to cause a substantial likelihood of confusion with Plaintiff's *Collagen 21®* trademark as to the source or sponsorship of these dietary supplements and creates a subliminal trademark association that allows Defendants to gain a foothold in Plaintiff's market by exploiting subliminal or conscious association with Plaintiff's protected mark.  We will examine each of the factors in turn.

(i)      <u>Similarity of the marks.</u>

*Collagen 21®* and *Colágeno Bioactivo 21* marks are very similar.  Similarity is determined on the basis of the total effect of the designation, rather than a comparison

of individual features.  Perfumania, Inc. v. Perfulandia, Inc., 279 F. Supp. 2d 86, 98 (D. Puerto Rico 2003) (*citing* Pignons, 657 F.2d at 487).  Words may be recognized as similar because of sound, appearance, meaning, and connotation and a finding of similarity may be based on appearance alone.  Id.  (citations omitted).  The test of consumer confusion "is not whether the products can be differentiated when subjected to a side-by-side comparison, but rather whether they create the same general impression.".  Veryfine Products, Inc., v. Colon Brothers, Inc., 799 F. Supp. 240, 251 (D.P.R. 1992). (*quoting* RJR Foods, Inc., v. White Rock Corp., 603 F.2d 1058, 1060 (2d Cir. 1979).

In the case at bar, Plaintiff's registered trademark *Collagen 21®* and Defendants' mark *Colágeno Bioactivo 21* is identical in sound, appearance, meaning and connotation.  Thus, based on the "total effect" of the marks, the similarity between the two marks is quite strong and significant.  *See* Perfumania Inc., 279 F. Supp at 99 (finding similarity in sound and appearance between the mark "Perfumania" and "Perfulandia").  *See also* Star Financial Services, 89 F.3d at 10 (finding that the designations "STAR Mortgage" and "AASTAR Mortgage" could be sufficiently similar to cause confusion as to the source of the products.)

It is undeniable that Defendants are using the same mark as Plaintiff.  The only difference between the two marks is that Defendants are using a Spanish version of Plaintiff's mark, namely, *Colágeno Bioactivo 21*.  Defendants' adoption of such similar mark in a different language is telling because:

> in order to constitute an infringement, it is not necessary that the trademark be literally copied.  Neither is it necessary that every word is appropriated.  There may be infringement where the substantial and distinctive part of the trademark is copied or imitated." *See*

Jordan K. Rand Ltd. v. Lazoff Bros., Inc., 537 F. Supp. 587, 595 (D.P.R. 1982) (Citing Queen Mfg. Co. v. Isaac Ginsberg & Bros., 25 F2 284 (8 Cir. 1928).

Moreover, upon evaluating this case under the doctrine of foreign equivalents, one can only conclude that the foreign words from common languages, such as Spanish, are translated into English to determine genericness, descriptiveness, as well as similarity of connotation in order to ascertain confusing similarity with English word marks. *See* In re Sarkli, Ltd., 721 F.2d 353 (Fed.Cir.1983); In re Am. Safety Razor Co., 2 U.S.P.Q.2d 1459, 1460 (T.T.A.B.1987) (finding BUENOS DIAS for soap confusingly similar to GOOD MORNING for shaving cream).  As such *Colágeno* is translated by the relevant consumers into *Collagen*.

Furthermore, it must be noted that in the trademark prosecution of *Collagen 21®,* Plaintiff disclaimed the term *Collagen,* making the element "21" the dominant part of the *Collagen 21®* Mark.  "When part of a mark is "disclaimed" in order to qualify for registration, the disclaimed part is usually not the "dominant" part."  *See* 4 McCarthy on Trademarks and Unfair Competition § 23:45 (5th ed.).  "It is appropriate in determining the question of likelihood of confusion to give greater weight to the important or "dominant" parts of a composite mark, for it is that which may make the greatest impression on the ordinary buyer…all courts agree that it is proper to give more weight to the "dominant" part of a mark in the likelihood of confusion analysis."  *See* 4 McCarthy on Trademarks & Unfair Competition § 23:42 (5th Ed.)  *See also* Bos. Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 34 (1st Cir. 2008) (DiClerico, J., concurring) ("[I]f the most dominant feature of both marks

is the same or similar, then that similarity may cause confusion."); <u>Beacon Mut.</u>, 376
F.3d at 18 (concluding that a reasonable factfinder could conclude that the mark
"Beacon Mutual Insurance Company" was substantially similar to "OneBeacon
Insurance Group" because they shared "Beacon" as their "most salient" word).

     Although it is not proper to dissect a mark, one feature of a mark may be more
significant and it is proper to give greater force and effect to that dominant feature.
Thus, as a preliminary to comparing marks in their entireties, it is not improper to
discount the similarity of descriptive or generic parts of conflicting marks." *See* 4
<u>McCarthy on Trademarks and Unfair Competition</u> § 23:42 (5th ed.). Generic words in
a compound phrase bear less weight in the similarity analysis. *See* <u>Boston Duck</u>, 531
F.3d at 24.

     Here, as with Plaintiff's *Collagen 21*® Mark, the dominant part of the *Colágeno
Bioactivo 21* is the term "21" which causes likelihood of confusion. The similarity on
the descriptive words *Collagen, Colágeno* and *Bioactivo* must be discounted and
greater weight must be given to the fact that the dominant feature of both trademarks
is "21" which causes likelihood of confusion between consumers. *See* <u>Oriental
Financial Group, Inc. v. Cooperativa de Ahorro y Crédito Oriental</u>, 832 F.3d 15, 28
(1st Cir. 2016) (While more weight should be given to the dominant part of the marks,
the lower court erred in considering a descriptive term as dominant. A likelihood of
confusion was found on appeal between the junior COOP ORIENTAL and the senior
ORIENTAL for competing financial institutions in Puerto Rico. "Coop" was a term
describing the junior user as a cooperative credit union and "oriental" was the

dominant part of both marks. "Where two marks share their most salient word, that fact weights strongly in favor of similarity.")

In this case, Defendants chose to use the distinctive and dominant part of Plaintiff's registered trademark by adopting the element "21" to distinguish its dietary supplement products in the marketplace. As if that were not enough, Defendants also combined the element "21" with the Spanish version of the word *Collagen*, namely, *Colágeno*. Undoubtedly, this unabashed duplicate of Plaintiff's *Collagen 21®* Mark creates, at the very least, a subliminal trademark association that allows Defendants to gain a foothold in the Plaintiff's market by exploiting subliminal or conscious association with Plaintiff's registered mark *Collagen 21®*.

Accordingly, when viewed in their entireties, any reasonable factfinder could conclude that the marks at hand are essentially identical for trademark purposes.

        (ii)    <u>Similarity of the goods.</u>

Plaintiff promotes, markets, distributes and sells dietary supplement products incorporating collagen under its registered mark *Collagen 21®* since 2014. Defendants are using the mark *Colágeno Bioactivo 21* to identify their dietary supplement products allegedly "100% natural" and "containing twenty-one (21) types of collagen that the body stops producing as years pass by." Accordingly, both Plaintiff and Defendants offer the same goods, which are in direct competition with each other. This factor indisputably indicates likelihood of confusion. <u>Star Financial Services</u>, 89 F.3d at 10.

        (iii)    <u>Channels of trade, advertising and classes of prospective purchasers</u>

We examine all of these factors jointly in accordance with First Circuit precedent. Perfumania, Inc., 279 F. Supp. At 99. (citations omitted). When considering the relationship with the parties' channels of trade, the Courts have looked at the means by which the goods are distributed as well as the establishments or sales outlets through which they are distributed (eg. Supermarkets, pharmacies, etc.). *See*, Boston Athletic, 867 F.2d at 30; Pignons S.A. de Mecanique de Precision, *supra*; Nutrasweet, 982 F. Supp. at 102; Veryfine Products, Inc., 799 F.Supp at 253.

In the instant case, the channels of trade and advertising and classes of prospective purchasers are identical. Both Plaintiff's *Collagen 21®* and Defendants' *Colágeno Bioactivo 21* marks are promoted and advertised through the Internet, television informercials, YouTube advertisements and radio stations. *Collagen 21®* and *Colágeno Bioactivo 21* dietary supplements target the exact same class of prospective customer, that is, customers interested in dietary supplements incorporating collagen for strengthening bones and enhancing skin appearance.

In light of the above, it is undisputed that *Collagen 21®* and *Colágeno Bioactivo 21* travel through the same channels of trade and advertising and target the same category of consumers, facts that contribute significantly to the likelihood that the products could be confused or that the purchaser may be mistaken as to the source or sponsorship of the competing products. In this regard it should be noted that the purchasing public does not normally know the source of the article. It suffices that the

public normally assumes that articles bearing the same mark are from the same source." *See* <u>Boston Athletic</u>, 867 F.2d at 31 (footnote).

       (iv)    <u>Evidence of actual confusion.</u>

In suing under any of the three Lanham Acts provisions, a plaintiff need only show that a likelihood of confusion is in prospect; a showing of actual confusion is not required. <u>Perfumania, Inc.</u>, 279 F.Supp. at 100. (citations omitted). The Court of Appeals for the First Circuit has explained that "[a] showing of actual confusion is not essential in order to find a likelihood of confusion." <u>Id.</u> Accordingly, courts have routinely granted injunctions notwithstanding an absence of evidence of actual consumer confusion. <u>Id.</u> As a matter of fact, lack of direct evidence of confusion "might be attributable to lack of discovery. In any case, the law only requires a finding of a <u>likelihood</u> of confusion". (Our emphasis). *See* <u>Nutrasweet</u>, 982 F.Supp at 102.

Notwithstanding, any evidence of actual confusion is strong proof of the fact of a likelihood of confusion. *See* 4 <u>McCarthy on Trademarks and Unfair Competition</u> § 23:45 (5th ed.) Evidence of actual confusion context does not need to be overwhelming to give rise to a reasonable inference of confusion. Indeed, "even a few incidents" of actual confusion are "highly probative of the likelihood of confusion." *See* <u>Dorpan v. Hotel Meliá, Inc.</u>, 728 F.3d 55 (1st Cir. 2013) (citing <u>Kos Pharms., Inc. v. Andrx Corp.</u>, 369 F.3d 700, 720 (3d Cir. 2004); *see also* <u>Sports Auth.</u>, 89 F.3d at 964 (concluding that on the actual confusion prong "evidence of misdirected phone calls between [plaintiff's] stores and [defendant's] restaurants, and especially the evidence that

customers have believed there to be a connection between the restaurants and stores, is sufficient to create a genuine issue of fact on this factor").

In the case at hand, Plaintiff, through his Mundo Natural call center, has received numerous phone calls from customers requesting information about the *Colágeno Bioactivo 21* products and seeking to buy the same. These instances of consumer confusion are highly probative of the confusion caused by Defendants infringing mark and products.

(v) <u>Defendant's intent in adopting the infringing mark</u>.

This Court has held on various occasions that the federal registration of a trademark places third parties on constructive notice of the ownership of the registered mark. *See* <u>Veryfine Products, Inc.</u>, 799 F. Supp. at 254 and <u>Davidoff Extension, S.A.</u>, 747 F. Supp at 127. Therefore, "once registration is achieved 'no subsequent adoption and use of the same or a <u>similar mark</u> for the <u>similar goods</u> can be justified on a claim of good faith'." (Our emphasis). *See* <u>Davidoff Extension, S.A.</u>, 747 F.Supp at 127. As a result, constructive notice alone can show that Defendant adopted its mark in bad faith. <u>Veryfine Products, Inc.</u>, 799 F.Supp at 254.

The facts of the present case are very similar to the factual scenario that led the <u>Veryfine</u> Court to conclude that Defendant sought to profit from Plaintiff's reputation, sales, and popularity when it adopted the infringing mark. In the present case, as in <u>Veryfine</u>, Defendant had constructive notice of Plaintiff's federally registered trademark before adopting a similar mark for a similar competing product. Plaintiff asked Defendants "to cease and desist from selling its infringing products."

Just like in <u>Veryfine</u>, Defendant "refused to withdraw the product from the market." <u>Id.</u> As a result, it is evident that "said conduct establishes an intent to trade on [Plaintiff's] goodwill, for [Defendant] had 'the affirmative duty to avoid any likelihood of confusion with Plaintiff's trademark which was already federally registered and in use." <u>Id.</u>

The similarities do not end there. As in <u>Veryfine</u>, Defendants, adopted such similar mark to that of the Plaintiff that it is apparent that when Defendants adopted its mark, they "intended to benefit from [Plaintiff's] success, strong mark, and consumer popularity." <u>Id</u>. In effect the uncanny resemblance between the marks shows that Defendants "inten[ded] to benefit from [Plaintiff's] reputation." *See* <u>Volkswagendwerk Atkiengesellschaf</u>, 814 F.2d at 819.

      (vi)   <u>Strength of the mark</u>.

In "assessing a mark's strength, the trier of fact "typically evaluate[s] a mark's strength primarily on the basis of its commercial strength, analyzing such factors as 'the length of time a mark has been used and the relative renown in its field; the strength of the mark in plaintiff's field of business; and the plaintiff's action in promoting the mark.'" <u>Bos. Duck Tours</u>, 531 F.3d at 16 n.14 (quoting <u>Equine Techs., Inc. v. Equitechnology, Inc.</u>, 68 F.3d 542, 547 (1st Cir. 1995)).

As will be shown, Plaintiff meets the aforementioned criteria for a "strong mark". The first factor is satisfied because the *Collagen 21®* trademark for dietary supplements has been in continuous use for approximately eight (8) years. In addition, the mark *Collagen 21®* is renowned in the field of vitamins and dietary

supplements and Plaintiff promotes it through diverse means, including television, radio and written press.  Accordingly, it is clear that *Collagen 21®* easily meets the requirements of a strong mark.

In light of the foregoing, any reasonable factfinder can conclude that the eight (8) <u>Pignons</u> factors support Plaintiff's claims of confusion.

**(e)      Unfair competition/false advertising allegations.**

Section 43(a) of the Lanham Act governs unfair competition claims.  This Court has held on numerous occasions that "the same facts supporting a suit for trademark infringement will support a suit for unfair competition." <u>Rand v. Lazoff Bros., Inc.</u>, 537 F. Supp. at 597.  As a result, our analysis of the likelihood of confusion under the trademark infringement cause of action is equally applicable to Plaintiff's unfair competition.  <u>Lamparello v. Falwell</u>, 420 F.3d 309, 313 (4th Cir. 2005).

As to false advertisement, the Supreme Court recently held in <u>Lexmark International, Inc. v. Static Control Components, Inc.</u>, 134 S. Ct. 1377, 1390 (2014) that to state a valid claim, a plaintiff must "show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." <u>Id</u>. at 1391.  "[W]hen plaintiff alleges that a direct competitor has falsely alleged a quality or ingredient of its product, this is likely to cause a diversion of sales. This satisfies the Lexmark requirement of proximate causation."  *See* 4 <u>McCarthy on Trademarks and Unfair Competition</u> § 27:30 (5th Ed.)

In the instant case, Plaintiff will show that Defendants have made false and/or misleading statements in their advertisements in violation of the *Lanham Act*, 15 U.S.C. § 1125(a), specifically stating that their products have twenty (21) types of collagen when in fact a natural supplement that has not been pharmaceutically or chemically processed can't have this characteristic or quality. This false statement is made by Defendants knowingly and with the clear intent to deceive a substantial portion of the relevant public about the true nature, characteristics and qualities of Defendant's products and to induce substitution of its product for those of Plaintiff.

Defendants are heavily invested in promoting, advertising, distribution and sale the infringing *Colágeno Bioactivo 21* mark and products in local media and continuously refer to or allude to the supposed "21 types of collagen" ingredients. Defendants' false and misleading advertising claims have directly resulted in the loss of current and prospective consumers who, but for Defendants' false and misleading advertising claims, would have purchased products from Plaintiff. As such, injunctive relief is appropriate to prevent deceptive and misleading advertisements pursuant to Section 45 of the *Lanham Act,* 15 U.S.C. § 1127.

## 2. <u>Plaintiff is likely to succeed on the merits of his claims against Arso Radio Corporation and New Life Broadcasting, Inc.</u>

Arso Radio and New Life have refused to cease or stop broadcasting the infringing promotional materials and advertising segments featuring the *Colágeno Bioactivo 21* mark after being advised of Plaintiff's superior federal trademark rights and that said activity is actually deceiving consumers as to the origin, source, sponsorship, or affiliation of co-defendants' collagen products with Plaintiff's.

Accordingly, Arso Radio's and New Life's have consciously permitted, enabled and contributed to the illegal and infringing conduct to continue. Accordingly, co-defendants Arso Radio and New Life are not innocent and injunctive relief must be granted in order to enjoin and restrain them immediately from broadcasting or advertising co-defendants Miami All Network, REV and RGV's products bearing the infringing *Colágeno Bioactivo 21* and be liable for any damages resulting therein.

### 3. **Absent an injunction, Plaintiff will be irreparably harmed**

In a trademark infringement case, a Plaintiff who demonstrates a likelihood of success on the merits creates a presumption of irreparable harm. Perfumania, Inc., 279 F.Supp. at 103. Irreparable injury arises because the trademark owner is deprived of its ability to control the nature and quality of a product that the public believes it provides, even if the infringing product is of the same quality as the product sold under the registered trademark. Moreover, trademark infringement damages the mark itself and the owner's goodwill, an intangible value that can never accurately be ascertained. Id. By the same token, in an unfair competition case, where the parties are direct competitors, proof that consumers are likely to be misled into believing that defendant's product is superior to plaintiff's, it follows that plaintiff will lose some portion of the market "and thus suffer irreparable injury." Coca-Cola Co. v. Tropicana Products, Inc., 690 F.2d 312, 216 U.S.P.Q. 272 (2d Cir. 1982). Thus, injunctive relief is appropriate when the elements of trademark infringement and unfair competition/false designation of origin are established. *See* The Keds Corp. v. Renee Intern. Trading Corp., 888 F.2d 215 (1st Cir. 1989); K-Mart

<u>Corp. v. Oriental Plaza, Inc</u>,. 875 907 (1st Cir. 1989); <u>Boston Athletic Ass'n</u>, 867 F.2d at 34; <u>Hypertherm, Inc. v. Precision Products, Inc.</u>, 832 F.2d 697 (1st Cir. 1987); <u>Volkswagendwerk Atkiengesellschaft</u>, 814 F.2d at 812.   As the First Circuit explained:

> By its very nature, trademark infringement results in irreparable harm because the attendant loss of profits, goodwill and reputation cannot be satisfactorily quantified and, thus, the trademark owner cannot adequately be compensated.   Hence, irreparable harm flows from an unlawful trademark infringement as a matter of law.

<u>Société Des Produits Nestle, S.A. v. Casa Helvetia, Inc.</u>, 982 F.2d 633, 640 (1st Cir. 1992).

Here, Defendants' continued unauthorized use of the infringing *Colágeno Bioactivo 21* mark is causing Plaintiff to lose control of the *Collagen 21®* Mark. Defendants are using the infringing *Colágeno Bioactivo 21* mark to offer the same products Plaintiff offers.   Thus, consumers cannot help but be confused and deceived into identifying those goods with Plaintiff.   In fact, consumers have begun to contact Plaintiff's Mundo Natural call center requesting information about the *Colágeno Bioactivo 21* products.   Moreover, Google searches intersperse Plaintiff and Defendants' goods.

Therefore, Plaintiff has established that it has a very good probability of prevailing on its trademark infringement, unfair competition and false advertisement claims.   Accordingly, Plaintiff has established the irreparable injury necessary for injunctive relief.

Plaintiff is entitled to an injunction to prevent Defendants from continuing their infringement, which will only escalate.

### 4. **The balance of equities favors Plaintiff**

The balance of equities favors Plaintiff because the risk that an injunction would be improper is so low in this case.  Although Defendants could suffer harm if the injunction were not legally justified, the chance of that is small, given that Plaintiff is undisputedly the senior user of a registered mark.

Moreover, the injunctive relief Plaintiff seeks will not close down Defendants' businesses but will merely require them to distribute and sell dietary supplements under a name that is not confusingly similar to Plaintiff's *Collagen 21®* Mark. Moreover, the "irreparable injury that … plaintiff has already sustained as a result of the intangible damage done to plaintiff's mark—the symbols of the reputation and goodwill it has developed throughout the years—will continue in the future." Veryfine Products, 799 F. Supp. at 257 (*quoting* Geoffrey Inc.*,* 756 F. Supp. at 668 (ellipsis in original).  The injury to Plaintiff outweighs any harm that Defendants might sustain in being unable to continue promoting, marketing, distributing and selling its dietary supplements with the infringing *Colágeno Bioactivo 21* mark. Veryfine Products, 799 F. Supp. at 257.

If defendants are not restrained pending trial, the commercial significance of Plaintiff's trademark will be undermined with resulting loss of trade and customer goodwill, both of immeasurable nature. Thus, the balance of hardships favors plaintiff.  Perfumania, Inc., 279 F.Supp. 2d at 104.

4. **The public interest favors granting preliminary injunctive relief.**

A preliminary injunction would be in the public interest.  The public is likely to be deceived and confused by Defendants' improper and unauthorized use of the infringing *Colágeno Bioactivo 21* mark.  "In a trademark case, the public interest is 'most often a synonym for the right of the public not to be deceived or confused.'… Where a likelihood of confusion arises out of the concurrent use of a trademark, the infringer's use damages the public interest." S & R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371 (3d Cir. 1992).  Consumer confusion is by its very nature, against the public interest.  K-Mart Corp., 875 F.2d at 916; Veryfine Products, 799 F. Supp. at 258.  The injunctive relief Plaintiff seeks would prevent further injury to the public interest.  Veryfine Products, 799 F. Supp. at 258; Geoffrey Inc., 537 F. Supp. at 597.

For the foregoing reasons, the Court should grant Plaintiff's request for preliminary injunctive relief.  The Court should preliminarily restrain Defendant from offering for sale, selling, marketing or advertising its dietary supplements under the improper, unauthorized infringing *Colágeno Bioactivo 21* mark or any other similar mark that is confusingly similar to Plaintiff's registered mark *Collagen 21®*.

V. **CONCLUSION**

For the above-discussed reasons, Plaintiff contends that it has met its burden of demonstrating success on the merits and the threat of irreparable harm.  In addition, Plaintiff has demonstrated that the balance of hardships decidedly tips in its favor and the issuance of an injunction would be in the public interest and

necessary in order to protect the *status quo* pending a full hearing or trial on the merits.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico this 16th day of June 2022.

<table>
<tr><td><strong>HOGLUND & PAMIAS, P.S.C.</strong><br>256 Eleanor Roosevelt<br>San Juan, Puerto Rico 00918<br>Tel. (787) 772-9834<br>Fax. (787) 772-9533</td><td><strong>BELÉNDEZ LAW OFFICES</strong><br>PO BOX 11534<br>SAN JUAN, PUERTO RICO 00922<br>Telephone: (787) 406-8668</td></tr>
<tr><td>*s/ Samuel F. Pamias Portalatín*<br>USDC NO. 220309<br>samuel@hhoglund.com</td><td>*s/ Laura Beléndez Ferrero*<br>USDC NO. 216301<br>Lbelendez@msn.com</td></tr>
</table>

*Attorneys for Plaintiff*